## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **INFECTIOUS DISEASE DOCTORS, P.A.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-02920-L** |
| | § | |
| **BLUECROSS BLUESHIELD OF TEXAS,** | § | |
| **A DIVISION OF HEALTH CARE** | § | |
| **SERVICE CORPORATION,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Blue Cross Blue Shield of Texas, a Division of Health Care Service Corporation's ("Defendant" or "BCBSTX") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss") (Doc. 35), filed December 9, 2013. The motion seeks dismissal pursuant to Rule 12(b)(1) and (3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and improper venue, and argues that the entire dispute should be arbitrated. The motion also seeks dismissal under Rule 12(b)(6) for failure to state a claim. Because Defendant seeks an order compelling arbitration, it should have filed a motion pursuant to 9 U.S.C § 4. In any event, the court construes Defendant's motion as a Motion to Dismiss and Compel Arbitration. After careful consideration of the motion, pleadings, record, and applicable law, the court, for the reasons herein stated, **grants in part** and **denies in part** Defendant's Motion to Dismiss and Compel Arbitration.

I.      **Factual and Procedural Background**

A.      **Procedural Background**

On July 26, 2013, Plaintiff Infectious Disease Doctors ("Plaintiff" or "IDD") filed its Complaint against Blue Cross Blue Shield of Texas ("BCBSTX").  On October 8, 2013, Plaintiff filed its First Amended Complaint ("Amended Complaint") against BCBSTX and added additional out-of-state Defendants.[1]  Plaintiff alleges breach of contract, Texas Insurance Code violations, Employee Retirement Income Security Act ("ERISA") violations, and Federal Employee Health Benefit Plan Act ("FEHBA") violations.  Plaintiff seeks (1) damages; (2) statutory penalties and interest; (3) unpaid benefits submitted to IDD on an out-of-network basis; (4) costs and attorney's fees; and (5) prejudgment and postjudgment interest.  On December 9, 2013, BCBSTX filed its Motion to Dismiss and Compel Arbitration.

B.      **Factual Background**

IDD is an infectious disease practice that consists of eleven doctors.  IDD seeks payment for services rendered by its doctors.  Plaintiff alleges that each of its physicians contractually assigned to IDD his or her right to bill and receive payment from third-party payers.  Plaintiff, additionally, alleges that patients assigned IDD their right to receive benefits from BCBS.

BCBSTX is a network provider for nine of the eleven IDD doctors.  Three IDD doctors entered a Group Managed Care agreement ("Genesis PPO Agreement") with BCBSTX and Genesis Physicians Group for BCBSTX's PPO network.[2]  Under the Genesis PPO Agreement, the doctors

---

[1] Plaintiff's First Amended Complaint added 27 additional defendants.  Plaintiff has since dismissed many of the out-of-state Defendants, and the court granted the remaining out-of-state Defendants' Motion to Dismiss on August 29, 2014.  BCBSTX is the only remaining defendant.

[2] Drs. Tummala and Martinez were the original two doctors to enter the Genesis PPO Agreement on January 1, 2003.  Dr. Prabhakar joined Genesis PPO Agreement on September 13, 2011.

agreed to provide services to patients covered by BCBSTX, and BCBSTX likewise agreed to pay IDD for those services.  Before the three doctors entered the Genesis PPO Agreement, Plaintiff alleges that the three doctors entered the Genesis HMO Agreement on February 1, 2001.

Six physicians entered individual managed care agreements with BCBSTX's PPO and HMO networks. These physicians individually entered the  Physician PPO Contract and the Physician HMO Contract.  The physicians entered their individual agreements while the dispute for claims between IDD and BCBSTX was ongoing; therefore, some of these physicians' claims are out-of-network    that is, submitted by the physicians before they entered into agreements with BCBS    and some are in-network    submitted by the physicians after they had entered into agreements with BCBS.  Plaintiff only seeks payment for claims that relate to the services provided when the physicians were out-of-network.  Additionally, two physicians remain out-of-network and never entered into any agreements with BCBSTX.

Plaintiff alleges that BCBSTX failed to pay IDD for claims submitted between 2009 through 2013.  In 2009, BCBSTX audited IDD.  During this time, a dispute between  IDD's former office manager and a BCBSTX fraud investigator arose.  After the confrontation, Plaintiff contends that BCBSTX flagged IDD's account in BCBSTX's claims processing system, which prevented IDD from receiving payment.  On January 31, 2013, BCBSTX and IDD met to  resolve their dispute.  On February 11, 2013, BCBSTX sent IDD a letter stating that BCBSTX removed IDD from its "pre-pay review" status.  IDD received payment for claims submitted subsequent to BCBSTX's letter; however, Plaintiff contends that it has not received payment for claims submitted before the letter, which specifically pertains to claims submitted between 2009 and 2013.

## II.      Standing Issues

The court first addresses Defendant's argument that Plaintiff lacks prudential standing to sue for breach of the Genesis PPO Agreement and violations of the Texas Insurance Code.  Issues regarding Article III standing or constitutional standing are properly addressed under Rule 12(b)(1), whereas prudential standing issues are addressed under Rule 12(b)(6).  *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir.2011).  Accordingly, Defendant's motion to dismiss for lack of standing under the Genesis PPO Agreement and the Texas Prompt Payment Act does not implicate the court's subject matter jurisdiction, and Defendant properly argues for dismissal under Rule 12(b)(6).  Prudential standing requirements address:

> [(1)] whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, [(2)] whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and [(3)] whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir.2009) (internal quotations and citations omitted).

### A.      Genesis PPO Agreement

Defendant argues that IDD and BCBSTX are not in privity of contract and that IDD is not a third-party beneficiary to the Genesis PPO Agreement.  At this stage, Plaintiff alleges sufficient facts, which if proved, would establish that IDD's physicians assigned their contractual rights to IDD.  Plaintiff argues that, as a condition of their employment, the IDD physicians assigned their right to submit claims to commercial payors and receive payment for those claims.  Accordingly, it was IDD that submitted the insurance claims to BCBSTX and was denied payment from them.  IDD further argues that BCBSTX acknowledged this assignment by sending IDD the letter stating that

payment of the claims would resume.  Moreover, BCBSTX sends IDD, not the individual physicians, payment for the claims.

Dismissal for failure to state a claim for which relief can be granted is premature on the basis that Plaintiff lacks prudential standing and did not receive assignment of the physicians' contracts. Defendant properly acknowledges that it must accept the allegations pled in Plaintiff's Amended Complaint as true but  fails to address Plaintiff's argument that the physicians assigned to IDD their right to bill and receive payment from the third-party payors.[3]  Accordingly, the court will deny Defendant's Motion to Dismiss for lack of prudential standing under the Genesis PPO Agreement.

### B.      Texas Insurance Code Violations

Defendant also argues that IDD and BCBSTX do not have a contractual relationship and therefore IDD lacks standing to sue under the Texas Insurance Code for violations of the Texas Prompt Payment Act.  Defendant argues that the right to sue under the Texas Prompt Pay Act belongs only to the contracting physicians, providers, and insurers. Plaintiff alleges that the physicians' assignment of the contracts entitles it to penalties for Defendant's failure to make prompt payments.

Defendant cites a recent Texas Supreme Court case to support its argument.  *See Christus Health Gulf Coast v. Aetna*, 397 S.W.3d 651, 652 (Tex. 2013) (holding that the Texas Prompt Payment Act requires contractual privity between plaintiffs and defendants).  In *Christus*, however, the plaintiffs, a group of hospitals, entered a contract with an intermediary of a Medicare health maintenance organization (HMO).  The court held that plaintiffs could not sue the HMO instead of

---

[3] Defendant does not cite any authority that is on point or analogous to this case's fact situation and that addresses whether assignment of contracts creates standing.

the intermediary, because there was no contract between the plaintiffs and the HMO.  There was only a contract between the plaintiffs and the HMO's intermediary.  Here, Plaintiff alleges privity exists because the physicians assigned their contracts with BCBSTX to IDD.  Defendant does not address or contest Plaintiff's argument that the physicians assigned their rights to the BCBSTX contracts to IDD.  At this stage, Plaintiff has pled sufficient facts to survive dismissal under the 12(b)(6) standard.  Accordingly, the court will deny Defendant's Motion to Dismiss for lack of prudential standing to sue under the Texas Prompt Payment Act.

## III.     Motion to Compel Arbitration

Defendant argues that Plaintiff must arbitrate its entire dispute with BCBSTX.   There are multiple arbitration agreements to consider.  Plaintiff, moreover, seeks recovery for three different types of insurance claims submitted.  First, Plaintiff seeks recovery for insurance claims submitted pursuant to the Genesis PPO agreement by suing for breach of contract and Texas Insurance Code violations.  Second, Plaintiff seeks recovery for insurance claims submitted by doctors who were initially out-of-network and later became in-network; here, Plaintiff asserts causes of action for ERISA violations, breach of contract of patients' member benefit plans, and failure to pay benefits under FEHBA.  Third, Plaintiff seeks to recover for the insurance claims submitted by doctors who remained out-of-network for all relevant periods of this lawsuit and alleges ERISA violations, breach of contract for patients' member benefit plans, and failure to pay benefits under FEHBA.

### A.      Standard for Motion to Compel Arbitration

The FAA "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir.1990) (noting that there is a strong policy in favor of arbitration under the FAA). In deciding

**Memorandum Opinion and Order - Page 6**

whether to grant a motion to compel arbitration, the court first considers whether the parties agreed to arbitrate the dispute at issue. *See Webb v. Instacorp., Inc.*, 89 F.3d 252, 258 (5th Cir.1996) (per curiam). The court next determines whether there are any legal restraints external to the agreement that would foreclose arbitration of the dispute. *See OPE Int 'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir.2001) (per curiam).

Whether parties agreed to arbitrate involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb*, 89 F.3d at 258 (citations omitted). The court decides these questions according to the state law governing contract formation. *Id*. As to the first consideration, "[w]hile there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." *Banc One Acceptance Corp v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citation omitted). After determining that an agreement to arbitrate exists, "the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Id.*

## B.   Analysis

### 1.   Claims Submitted under the Genesis PPO Agreement

Defendant argues that Plaintiff's claims should be arbitrated according to the arbitration clause in the Genesis PPO Agreement. Because neither party denies the existence of a valid arbitration agreement, the only contested issue is whether Plaintiff's claims are within the scope of the Genesis PPO Agreement's arbitration clause. Plaintiff contends that the claims are not subject to arbitration because they fall within an exception to the agreement, while Defendant argues that the exception is not applicable.

The Genesis PPO Agreement states:

> In the event any dispute shall continue after all BCBSTX administrative remedies have been exhausted with regard to performance or interpretation of any of the terms of this Agreement, *all matters in controversy, except compensation as described in Attachment A,* shall be submitted for Arbitration under the commercial rules and regulation of the American Arbitration Association, and in accordance with the Texas General Arbitration Act (Chapter 171 Texas Civil Practice and Remedies Code).

Def's Ex. A, App. 13-14.

The exception to arbitration references compensation described in Attachment A. Attachment A reads:

> A. **Compensation.** Medical Group agrees to accept as reimbursement for Covered Services the lesser of (1) billed charges or (2) the BCBSTX fee schedule, less any applicable Copayments, Coinsurance, or Deductible amounts.

> B. **Claim Submission.** In order to qualify for consideration for payment, claims for Covered Services and any required attachments must be submitted to BCBSTX as set forth in the Provider Manual and must be submitted (1) electronically in the HCFA National Standard Format (NSF) or the current version of the ANSI 837 format or (2) on a completed HCFA 1500 form or 1450/ UB92 form, as appropriate.

*Id.* at App. 16.

The court agrees with Defendant that the exception in Attachment A relates to the *rate* of compensation and not Plaintiff's *right* to compensation.  If the court accepted Plaintiff's construction of Attachment A, the exception would significantly diminish the broad agreement to arbitrate. Plaintiff reads the exception to apply to its dispute involving compensation; however, Plaintiff fails to read this exception in its entirety.  The exception specifically applies to compensation *described in Attachment A.*  Thus, it is the scope of Attachment A that determines the scope of the exception for compensation.  Attachment A has two sections: one describing the rate of compensation and one

describing the process for submitting claims.  Neither section describes the right to receive compensation.

Compensation, as described in Attachment A, relates to the rate that Medical Group agrees to accept as reimbursement, stating that it will accept the lesser of the billed charged or BCBSTX fee schedule.  Therefore, compensation described in Attachment A relates to a narrow aspect of compensation and not all issues involving compensation.  Comparing Plaintiff's claims with the language used in Attachment A demonstrates that the compensation Plaintiff seeks is different from the compensation that Attachment A describes.  To read otherwise would require the court to read additional terms into Attachment A.  Ultimately, Plaintiff is arguing that it is entitled to payment and is not arguing that BCBSTX improperly calculated the dollar amount of the claims.

Because the dispute extends beyond the bounds of Attachment A, Plaintiff is subject to the arbitration agreement in the Genesis PPO Agreement.  Accordingly, the court will grant Defendant BCBSTX's Motion to Compel Arbitration as to the insurance claims submitted by the doctors under the Genesis PPO Agreement.  These claims pertain to Plaintiff's allegations of breach of the Genesis PPO Agreement and Texas Insurance Code violations.

### 2. Claims by In-Network Doctors Submitted while Out-of-Network

Defendant argues that the claims submitted by the out-of-network physicians who later entered agreements with BCBSTX to become in-network are subject to arbitration.  There are four different network contracts in which the eleven IDD physicians entered: (1) Genesis PPO Agreement; (2) Genesis HMO Agreement; (3) Physician PPO Contract; and (4) Physician HMO Contract.  Plaintiff is not suing for breach of the Genesis HMO Agreement, the Physician PPO Contract, and the Physician HMO Contract; rather, Plaintiff acknowledges that insurance claims submitted pursuant to these contracts are subject to binding arbitration.  Plaintiff, however, seeks

recovery for insurance claims submitted by these doctors before they entered the agreements by suing

for breach of patients' member benefit plans, ERISA violations, and failure to pay FEHBA benefits.

Defendant counters that the network agreements require Plaintiff's claims to proceed to arbitration.

Specifically, Defendant contends that the Genesis HMO Agreement requires arbitration for claims

submitted by Dr. Prabhakar and argues that the Physician PPO Contract and Physician HMO

Contract contain broad arbitration clauses that encompass insurance claims submitted before the

physicians entered the network agreements.   The court addresses each of the parties' arguments

below.

### a.        Genesis HMO Agreement

Defendant argues that Dr. Prabhakar was subject to both the Genesis HMO and PPO

Agreements until August 18, 2009.  Plaintiff seeks to recover for alleged ERISA violations for the

claims submitted by physicians on an out-of-network basis; this includes claims submitted by Dr.

Prabhakar before entering the Genesis PPO Agreement on September 13, 2011.  Defendant argues

that claims submitted prior to August 18, 2009 must proceed to arbitration because Dr. Prabhakar

was subject to the Genesis HMO and PPO Agreements prior to that date.[4]  Neither party has

provided the court with enough information to evaluate whether Dr. Prabhakar is subject to an

arbitration agreement for claims submitted prior to August 18, 2009.

Defendant lumps the Genesis HMO and PPO Agreements together and does not state the full

significance of the August 18, 2009 date.  Plaintiff admits that Drs. Tummala, Martinez, and

---

[4] Although Plaintiff includes insurance claims submitted in 2008 in the tables of Plaintiff's Exhibit 1, 2, 3, and 4, the audit that gave rise to the dispute occurred in 2009, and Plaintiff states in its Amended Complaint that claims submitted between 2009 through 2013 are the claims that remain in controversy.  Defendant's argument for compelling arbitration, therefore, is only applicable to claims submitted by Dr. Prabhakar between January 2009 and August 18, 2009.

Prabhakar signed the Genesis HMO Agreement on February 1, 2001, and further acknowledges that it does not seek to recover for claims under the Genesis HMO Agreement because those claims are subject to binding arbitration.  Pl.'s Am. Compl. 16 n.2.  In its Amended Complaint, Plaintiff, however, states "Dr. Prabhakar did participate in BCBSTX's network before BCBSTX flagged IDD's claims; however, he became an out-of-network provider as to BCBSTX roughly at that time and was at all times relevant to this lawsuit until September 13, 2011."  Pl.'s Am. Compl. 22 n.5. Defendant counters that Dr. Prabhakar was under both the Genesis HMO Agreement and PPO Agreement prior to August 2009; this includes times that are relevant to Plaintiff's suit.  Other than making conclusory statements, Defendant fails to provide the court with any information in the pleadings that Dr. Prabhakar was subject to the Genesis HMO or Genesis PPO Agreements. Accordingly, the court will deny Defendant's Motion to Compel Arbitration for insurance claims submitted by Dr. Prabhakar prior to September 13, 2011.

### b.    *Physician HMO Contract and Physician PPO Contract*

Defendant contends that the relevant arbitration agreements were so broad that they apply to insurance claims predating the agreement.  Six IDD doctors entered managed care agreements during the course of the dispute between IDD and BCBSTX.  Therefore, some of the claims submitted by these doctors were out-of-network, while some claims were submitted when the doctors participated in the PPO and HMO networks. Whether these arbitration clauses apply to insurance claims that predate the individual network agreements is an issue of contract formation.  "[A] court may order arbitration of a particular dispute only when satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock v. International Brotherhood of Teamsters*, 561 U.S. 287, 288 (2010) (citations omitted).  Furthermore, "to satisfy itself that such agreement exists, the court must resolve

any issue that calls into question the specific arbitration clause that a party seeks to have the court

enforce." *Id*. (citation omitted).   Therefore, the language of the individual network agreements

control.

The Physician HMO Contract[5] provides:

> HMO Blue or Physician, as the case may be, shall give Notice to the other of the existence of a dispute.  In order to avoid the cost and time consuming nature of litigation, any dispute between HMO Blue and Physician arising out of, relating to, involving the interpretation of, or in any other way pertaining to this Agreement or any prior Agreement between HMO Blue and Physician shall be resolved using alternative dispute resolution mechanisms instead of litigation.  *HMO Blue and Physician agree and* acknowledge that *it is their mutual intention that this provision be construed broadly so as to provide for mediation and/or arbitration of all disputes arising out of their relationship as third-party Payer and Physician*.  The parties further agree that resolution of any dispute pursuant to this Agreement shall be in accordance with the procedures detailed below.

Def.'s Exs. D, F, H, J, L, and M, App.  91, 130, 167, 207, 247, and 285 (emphasis added).

The Physician PPO Contract[6] provides:

> In order to avoid the cost and time consuming nature of litigation, any dispute between BCBSTX and Physician arising out of, relating to, involving the interpretation of, or in any other way pertaining to this Agreement or any prior Agreement between BCBSTX and Physician shall be resolved using alternative dispute resolution mechanisms instead of litigation.  *BCBSTX and Physician agree and acknowledge that it is their mutual intention that this provision be construed broadly so as to provide for mediation and/ or arbitration of all disputes arising out of their relationship as third-party Payer and Physician.*

Def.'s Exs. C, E, G, I, K, and M, App. 68, 108, 146, 184, 224, and 264 (emphasis added).

---

[5] Drs. Krishnan,  Bhayani, Kotwal, Torten, Subramarian, and Swami entered into individual Physician HMO Contracts with the same arbitration clauses.

[6] Drs. Krishnan, Bhayani, Kotwal, Torten, Subramarian, and Swami also entered into the individual Physician PPO Contracts with the same arbitration clauses.  These are the same physicians who entered the Physician HMO Contracts.

The language in the Physician HMO Contract and Physician PPO Contract evidences an intent to apply the arbitration clauses broadly. The arbitration clauses in the Physician HMO Contract and Physician PPO Contract are different from the Genesis Agreements because the parties specifically state their intent to arbitrate "all disputes arising out of their relationship as third-party Payer and Physician." *Id.* Thus, the Physician HMO contract and Physician PPO Contract are broad enough to encompass the insurance claims submitted by these doctors when they were out-of-network because the claims still arise from their relationship as third-party payer and physician. *See Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985) ("The question of arbitrability is determined on the basis of the existence of an arbitration clause that on its face appears broad enough to encompass the parties' claims.") (citations omitted); *see also Ford Motor Co. v. Ables*, 207 Fed. App'x 443, 446 (5th Cir. 2006) ("Arbitration should not be denied 'unless it can be said with positive assurance than an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'") (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)). Accordingly, the court will grant Defendant's Motion to Compel Arbitration for claims arising under the Physician HMO and PPO Contracts.[7]

---

[7] In a footnote, Defendant acknowledges that the Physician HMO Contract provides an exception for disputes between a third party and BCBSTX but argues it does not apply. Def.'s Mot. to Dismiss 4 n.4. Plaintiff, however, acknowledges that it is subject to arbitration clauses for the claims submitted while the physicians were part of the HMO network. *See* Pl.'s Resp. to Def's Mot. to Dismiss 9 (stating that "BCBSTX is entitled only to arbitrate the claims related to unpaid claims while the rendering physician participated in its network through either the Genesis HMO Agreement or the Individual Managed Care Agreements [the Physician HMO Contract and Physician PPO Contract.").  Plaintiff does not argue that the exception in the arbitration agreement precludes arbitration between IDD and Defendant; rather, Plaintiff argues that the language in the arbitration agreement is not broad enough to apply to claims predating the contracts. Even if Plaintiff argued the exception applied, the doctrine of equitable estoppel, discussed in the next section, precludes the Plaintiff from relying on the exception.

**Memorandum Opinion and Order - Page 13**

### 3.      Claims Submitted by Out-of-Network Doctors

Defendant argues that the claims submitted for the two out-of-network doctors must also be submitted to arbitration.[8]   Plaintiff seeks recovery for the insurance claims submitted by these doctors by suing  for breach of contract, ERISA violations, and unpaid benefits under FEHBA.  The two doctors are not signatories to any agreement with BCBSTX.  Defendant contends that the court should apply equitable estoppel and compel arbitration for the insurance claims submitted on behalf of the two nonsignatory doctors because the Plaintiff's claims are intertwined with arbitrable disputes.[9]   Whether to apply the doctrine of equitable estoppel "is within a district court's discretion."  *Grigson v. Creative Artists Agency*, 210 F.3d 524, 528 (5th Cir. 2000).  The equitable estoppel doctrine applies in two circumstances.  First, it applies "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory."  *Id.* at 527 (adopting the Eleventh Circuit's intertwined claims test and allowing a nonsignatory defendant to compel a signatory plaintiff to arbitrate their dispute).  Second, equitable estoppel applies "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."  *Id.*

Here, Plaintiff is not relying on a network contract to collect the claims submitted by the out-of-network doctors.  Defendant contends that Plaintiff's claims asserted on behalf of the out-of-network physicians are inextricably intertwined with those claims asserted on behalf of the

---

[8] Drs. Desai and Uppal remain out-of-network.

[9] In total, there are six theories for binding a nonsignatory to an arbitration agreement: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) equitable estoppel; and (6) third-party beneficiary. *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003).  Defendant only raises the equitable estoppel argument.

**Memorandum Opinion and Order - Page 14**

physicians who are subject to arbitration agreements.  Having claims that are "inextricably intertwined" is insufficient by itself to justify applying equitable estoppel and compelling arbitration. *Bridas*, 345 F.3d at 362.  Courts traditionally have applied equitable estoppel and "estopped a *signatory* plaintiff from relying upon the defendants' status as a nonsignatory to prevent *defendants* from compelling arbitration under the agreement," thus preventing the plaintiff from "hav[ing] it both ways." *Id.* at 360.

The two physicians never agreed to arbitration and did not act in concert with signatories who agreed to arbitration, and this "distinction is *not* one without a difference." *Id.* at 361.  While a nonsignatory can estop a signatory, "the reverse is not also true: a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party." *Id.*  The two doctors are nonsignatories and never agreed to arbitration. Defendant therefore cannot compel IDD to arbitrate the claims that the nonsignatory physicians submitted.

Defendant also argues that the claims submitted by the out-of-network physicians should proceed to arbitration under a direct benefits theory of estoppel, which applies when "a nonsignatory 'knowingly exploits the agreement containing the arbitration clause.'" *Id.* at 362.  Plaintiff, however, has not exploited any agreement with BCBSTX with respect to the claims submitted by the out-of-network doctors.  Plaintiff has not argued or alleged that BCBSTX breached a specific agreement with the out-of-network physicians, because there is simply no agreement between the out-of-network physicians and BCBSTX to breach.  By its own admission, Plaintiff acknowledges that it is obligated to arbitrate its disputes when it exploits agreements with binding arbitration clauses. For example, by seeking payment for claims submitted by physicians in the HMO network, Plaintiff

seeks to exploit and receive the benefits from the Physician HMO Contract, and Plaintiff acknowledges that it must proceed to arbitration for those claims.  For the out-of-network doctors, there is no analogous agreement to exploit.  Accordingly, the court will deny Defendant BCBSTX's Motion to Compel Arbitration for the insurance claims submitted by the out-of-network doctors.

## III.   Motion to Dismiss

Because the court did not grant Defendant's Motion to Compel Arbitration for the claims submitted by the out-of-network physicians, the court also will consider Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To be clear, the following claims remain: (1) breach of the patients' member benefit plans; (2) ERISA violations; and (3) claims for unpaid benefits under FEHBA.  These causes of action, furthermore, pertain only to insurance claims submitted by the two out-of-network doctors and claims submitted by Dr. Prabhakar before September 13, 2011.

### A.   Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must

set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan*

**Memorandum Opinion and Order - Page 17**

*Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

**B.     Analysis**

1.     **Breach of Patients' Member Benefit Plans**

Defendant argues that Plaintiff does not plead sufficient facts to allow Defendant to respond. Plaintiff contends that IDD patients had member benefit plans from BCBS that covered the services provided by IDD physicians. Plaintiff further contends that these patients assigned their right to benefits to IDD and that IDD then submitted the claims to BCBSTX.  Plaintiff additionally argues that it has submitted each of its unpaid claims to BCBSTX.  Plaintiff further argues that BCBSTX's

failure to pay the claims breached the member benefit plans and consequently injured IDD as assignee of the plan.

Accepting all well-pleaded facts in the Amended Complaint as true and viewing them in the light most favorable to Plaintiff, the court determines that Plaintiff has pleaded a legally cognizable breach of contract claim. Plaintiff, therefore, has pleaded enough facts to state a claim that is plausible on its face in accordance with Rule 12(b)(6) and the standards set forth in *Twombly* and *Iqbal*. Accordingly, the court will deny Defendant BCBSTX's Motion to Dismiss Plaintiff's First Amended Complaint.

### 2.    ERISA Claims

Defendant does not raise any arguments for dismissing Plaintiff's ERISA claims for failure to state a claim. Plaintiff seeks recovery for ERISA violations for insurance claims that were submitted on an out-of-network basis. Defendant seeks dismissal pursuant to Rule 12(b)(6) and the standards set forth in *Twombly* and *Iqbal* for the following claims: (1) breach of the Genesis PPO Contract; (2) Texas Insurance Code violations; (3) breach of patients' member benefit plans; and (4) claims for unpaid benefits under FEHBA. Defendant, however, does not raise Rule 12(b)(6) arguments for the alleged ERISA violations and only addresses the ERISA violations when requesting that the court compel arbitration. Plaintiff's ERISA claims remain viable to the extent that they apply to claims submitted by the two out-of-network physicians and by Dr. Prabhakar when Dr. Prabhakar was not subject to the Genesis HMO Agreement or the Genesis PPO Agreement.

### 3.    Claim for Unpaid Benefits under FEHBA

Defendant argues that Plaintiff's claim for unpaid benefits under FEHBA should be dismissed. FEHBA establishes a Federal Employee Program ("FEP") that provides health insurance

**Memorandum Opinion and Order - Page 19**

to federal employees and their family members. FEHBA authorizes the Office of Personnel Management ("OPM") to regulate the FEP, and OPM contracts with private carriers, like BCBS, to administer the plans.

Defendant raises three arguments in support of dismissal. First, Defendant argues that Plaintiff's claims are barred by sovereign immunity. Second, Defendant argues that the court lacks jurisdiction to adjudicate Plaintiff's claims because Plaintiff must first channel its dispute through the OPM administrative process. Third, Defendant argues that two of Plaintiff's claims    breach of the Genesis PPO Agreement and Insurance Code violations under the Genesis PPO Agreement    should be dismissed to the extent that the physicians serviced FEP enrollees. The court addresses Defendant's first two arguments below. Because the court granted Defendant's Motion to Compel Arbitration for the Genesis PPO Agreement, Defendant's third argument is moot.

### *a.        Sovereign Immunity*

Defendant argues that Plaintiff's claims are barred by sovereign immunity and seeks dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendant argues that it is entitled to sovereign immunity because it shares similarities with Medicare intermediaries that are entitled to sovereign immunity and because money used to pay Plaintiff's damages would come from the federal Treasury. Plaintiff argues that the U.S. is not the real party in interest and that Defendant wrongly compares itself to Medicare intermediaries.

The Fifth Circuit has not addressed whether private carriers under FEHBA are entitled to sovereign immunity. *See Houston Cmty. Hosp. v. Blue Cross and Blue Shield of Texas*, 481 F.3d 265, 280 (5th Cir. 2007) (declining to decide whether FEHBA carriers were entitled to sovereign immunity). The Fifth Circuit stated that "Congress has waived sovereign immunity in the FEHBA

context as to coverage disputes brought by federal employee patients." *Houston Cmty. Hosp.*, 481 F.3d at 279.  Congress, however, has also restricted the manner in which plaintiffs can seek recovery. In any event, despite the Fifth Circuit having not addressed sovereign immunity, the court finds it unnecessary to address the issue because Plaintiff sued the wrong party, as will be shown in the next subsection.[10]

### b.       OPM Regulations

Defendant BCBSTX contends that Plaintiff's claim for unpaid benefits under FEHBA should be dismissed for lack of jurisdiction and for failure to comply with OPM regulations.  Plaintiff argues that it did not seek adjudication through OPM because Defendant did not deny IDD's claims; instead, it failed to even consider its claims.

The court agrees with Defendant.  OPM regulations establish the proper procedure for seeking payment of claims; because Plaintiff seeks the enrollees' benefits as assignee, Plaintiff must proceed with OPM's administrative review process. *See* 5 C.F.R. § 890.105(a)(2) (stating that OPM regulations apply "to other individuals or entities who are acting on the behalf of a covered individual and who have the covered individual's specific written consent to pursue payment of the disputed claim.")  First, "[a]ll health benefit claims must be submitted initially to the carrier of the covered individual's health benefits plan." 5 C.F.R. § 890.105(a)(1).   The regulations that follow establish the administrative review process: "[i]f the carrier denies a claim (or a portion of a claim), the covered individual may ask the carrier to reconsider its denial. If the carrier affirms its denial or

---

[10] The court granted Defendant's Motion to Compel Arbitration for Plaintiff's claims of breach of the Genesis PPO and for Insurance Code violations, and therefore does not address sovereign immunity with respect to those claims to the extent they relate to FEHBA enrollees.

**Memorandum Opinion and Order - Page 21**

fails to respond as required by paragraph (c) of this section, the covered individual may ask OPM to review the claim." *Id.*

Plaintiff submitted its claims to BCBSTX pursuant to OPM regulations. Plaintiff argues that it is not subject to the administrative review process because BCBSTX did not deny Plaintiff's claims and instead flagged IDD's account and ceased responding to IDD's claims. Plaintiff is correct that OPM's regulations do not specifically contemplate a delay in adjudicating claims; however, Plaintiff is not thereby excused from the administrative process. OPM's regulations establish a procedure that follows the claims from submission to denial. Covered individuals first submit claims to carriers; if the claim is denied, the covered individual seeks reconsideration. If the carrier affirms its denial, then the covered individual asks OPM to review the denial; and only if OPM affirms the denial can the covered individual proceed to federal court by suing OPM. Simply because Plaintiff is trapped at the beginning of this process does not mean Plaintiff can bypass the regulatory scheme. To allow covered individuals to proceed immediately to federal court because their claims remain pending and have not yet been denied, while covered individuals who have been denied must proceed through the administrative process, results in an inherently unfair process.

Moreover, the Supreme Court has laid out the proper procedure for adjudicating a claim:

> FEHBA's jurisdictional provision, 5 U.S.C. § 8912, opens the federal district-court door to civil actions "against the United States." OPM's regulation, 5 CFR § 890.107(c) (2005), instructs enrollees who seek to challenge benefit denials to proceed in court against OPM "and not against the carrier or carrier's subcontractors." Read together, these prescriptions "ensur[e] that suits brought by beneficiaries for denial of benefits will land in federal court."

*Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 696 (2006). OPM regulations do not allow Plaintiff to proceed to federal court simply because BCBSTX never denied its claims. Even if OPM regulations do not contemplate the situation when a carrier ignores submitted claims, the

regulations state, "A covered individual must exhaust both the carrier and OPM review processes specified in this section before seeking judicial review of the denied claim." 5 C.F.R. § 890.105(a)(1).

When a plaintiff brings its action to federal court, the carrier is not the proper party to sue. "A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the carrier or carrier's subcontractors." 5 C.F.R. § 890.107(c); *see also Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Georgia*, No. 12-CV-1607, 2014 WL 360291, at *3 ("The Supreme Court has noted that FEHBA 'channels disputes over coverage or benefits into federal court by designating a United States agency (OPM) as *sole defendant*. . . .") (citation omitted).   Accordingly, the court will grant Defendant's Motion to Dismiss and will dismiss without prejudice Plaintiff's FEHBA claim.

## IV.   Conclusion

For the reasons herein stated, the court **denies** Defendant's Motion to Dismiss for lack of prudential standing to sue for breach of the Genesis PPO Agreement and Texas Insurance Code violations.   The court **grants** Defendant BCBSTX's Motion to Compel Arbitration with respect to Plaintiff's claims arising from (1) the Genesis PPO Agreement[11] and (2) the Physician HMO Contract and Physician PPO Contract for insurance claims submitted by physicians before they entered the netowrks;[12] and **denies** Defendant BCBSTX's Motion to Compel Arbitration for Plaintiff's remaining causes of action against the out-of-network doctors.   The court lacks sufficient information from the pleadings to determine whether Dr. Prabhakar was subject to an arbitration

---

[11] These claims pertain to Plaintiff's allegations of breach of contract and Texas Insurance Code Violations.

[12] These claims pertain to Plaintiff's allegations of ERISA violations, breach of patients' member benefit plans, and FEHBA.

agreement for insurance claims submitted prior to August 18, 2009; and the court therefore **denies**

Defendant's Motion to Compel Arbitration for claims submitted by Dr. Prabhakar prior to August

18, 2009.  The court **denies** Defendant's Motion to Dismiss with respect to Plaintiff's claims for

breach of the patients' member benefit plans.  The court **grants** Defendant's Motion to Dismiss for

Plaintiff's FEHBA claim for unpaid benefits and  **dismisses without prejudice** Plaintiff's FEHBA

claim.

**In light of its ruling herein and the complexity of the issues presented, the court**
**strongly urges the parties to seek mediation of those claims for which arbitration is not**
**required.  This litigation, unless resolved, will be protracted and quite expensive, and all**
**parties would benefit by a solution that does not require a trial of the issues.**

**It is so ordered** this 30th day of September, 2014.

_____
Sam A. Lindsay
United States District Judge